## Stoker et al. v. Love's Ex'r et al.

Nov. 26, 1943.

Hardy & Logan and Bader & Maratta for appellants.

W. J. Goodwin for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This is a second appeal, the first opinion being Love's Ex'r et al. v. Stoker et al., 278 Ky. 555, 128 S. W. (2d) 922.

On November 10, 1936, Mrs. Louvinia Love conveyed a small apartment house in Louisville to her daughter, Mrs. Lillie Mae Stoker, and ten days later brought suit to cancel the conveyance upon the grounds of misrepresentation, fraud and absence of consideration. Upon a jury trial of the common law issues of fact, the court directed a verdict in favor of the defendant and, re-transferred the case to the equity branch where judgment sustaining the deed was duly entered. Two months afterward an inquest resulted in the grantor being declared of unsound mind. A second suit was filed by Mrs. Love's committee and other children by former marriages to vacate the deed upon the ground of mental incapacity. The court dismissed the petition as res adjudicata. Meanwhile, Mrs. Love died and the

case was revived in the name of her executor. We reversed the judgment because the issue of mental incapacity had not been raised in the first suit and we deemed it not to have been adjudicated.

On return of the case the defendant interposed a counterclaim praying alternatively that should the deed be set aside it be adjudged that the mother had held title as trustee of a resulting or constructive trust. A verdict was returned that the grantor was mentally incapable of executing the conveyance. Proof by depositions was taken on the issue of a trust. The chancellor adjudged the cancellation of the deed and that there was no trust. The grantee appeals.

The record of the trial of the issue of mental incapacity has not been brought up and, of course, the judgment cannot be questioned on the ground of any error in relation thereto, as indeed it is not questioned. The appellant's brief is principally devoted to the reargument of the question raised on the first appeal, namely, whether the judgment in the first suit in her favor was res adjudicata and to an attack upon a statement in the opinion which, taken from the context, is claimed to have decided that the judgment on the lunacy inquest was conclusive of the condition of the grantor's mind fifteen months previously when the deed was executed. The questions were considered on the appeal originally and on a petition for rehearing. The opinion is the law of the case, or as poetically said:

"The Moving Finger writes; and having writ,
Moves on; nor all thy Piety nor Wit
Shall lure it back to cancel half a Line,
Nor all thy Tears wash out a Word of it."

The chancellor fully reviewed the evidence upon the issue of a constructive or resulting trust and decided there was none. On the appeal Mrs. Stoker only argues that she should have been adjudged an equitable lien on the property for that part of the purchase price which she paid, namely, $600, and certain sums she had spent for improvements and repairs. When the property was purchased by her mother, Mrs. Stoker assisted her in the transaction and drew several checks on her own bank account, aggregating $600, payable to her father, who endorsed them to a trust company, through which the sale was being made and from which a loan was ob-

tained for the balance. The appellant testified that she had saved $600 during the four years since her graduation from High School and while working for three different employers at certain substantial salaries, and that she had deposited the savings in two accounts. The records of two of the employers do not sustain her and the third employer had gone out of business and its records were not available. Nor do the bank records sustain her. It is shown that Mrs. Stoker first opened an account in a bank on which the checks were drawn by a single deposit of $685.58 on August 28, 1919. The checks for the purchase price of the property were drawn October 29, 1919, and the account fully closed October 30th. One of Mrs. Stoker's explanations for having made the checks payable to her father is that she wanted his name to appear in the purchase in order to show that it was "Love property," so that the children of her mother by former marriages could not "come in on it." The evidence for the appellees is that Mrs. Stoker had procured the money from her mother, part of which she had saved from rents collected from other property and part of which she may have obtained from one of her sons, in whose name she had placed an interest in a saloon. The balance of the purchase price of this property was paid out of the rents. Mrs. Love, her husband and the appellant lived in one of the apartments, and it is quite well established that the mother attended to her own affairs by collecting rents and making payments on the debt. It is certain that during these eighteen years and more before the canceled deed was made Mrs. Stoker made no claim to having any interest in the property and did nothing to indicate that she had any sort of title or lien upon it. She made no claim when her father died in 1931, nor when her mother made her will in 1927, in which she had authorized her executor to sell the property and divide the proceeds among her husband and all the children, nor when she executed a codicil after the death of her husband providing that the proceeds be divided among her children. Mrs. Stoker admits that she knew about the preparation of the will and the codicil. This is only part of the evidence. There is much more which tends to support the judgment that Mrs. Stoker was not entitled to any lien upon the property.

We are of the opinion, therefore, that the judgment should be and it is affirmed.